## COMMONWEALTH vs. MOISES MORALES.

No. 06-P-1934.

Plymouth. February 15, 2008. - April 22, 2008.

Present: DUFFLY, DREBEN, & GRAINGER, JJ.

*Firearms. Controlled Substances. Probable Cause. Practice, Criminal,* Speedy trial, Confrontation of witnesses. *Constitutional Law,* Confrontation of witnesses, Speedy trial. *Search and seizure,* Probable cause.

At the criminal trial of firearm and ammunition charges, the judge's admission in evidence of a certificate from a qualified ballistics expert stating that the relevant gun and cartridges were a working firearm and ammunition did not violate the defendant's right of confrontation under the Sixth Amendment to the United States Constitution, in that the statement was not a prohibited expression of opinion, judgment, or discretion, but rather a summary of the established and admissible primary facts that bore on the question whether the weapon and cartridges were a firearm and ammunition within the meaning of G. L. c. 269. [588-589]

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence recovered pursuant to the search incident to his arrest, where the record amply supported the judge's finding that the police recognized the defendant as the passenger in a certain vehicle who was named in arrest warrants and who was alleged to have committed a domestic assault earlier in the day. [589-590]

A criminal defendant's baseless speedy trial claim did not provide a ground for dismissal of his indictments. [590]

INDICTMENTS found and returned in the Superior Court Department on April 19, 2002.

The cases were tried before *Linda E. Giles,* J.

*Cynthia A. Vincent Thomas* for the defendant.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

GRAINGER, J. The defendant was convicted after a jury trial of (1) possession of a firearm with a defaced serial number, G. L. c. 269, § 11C, (2) unlawful possession of ammunition, G. L. c. 269, § 10(*h*), (3) unlawful possession of a firearm, G. L.

c. 269, § 10(*a*), and (4) possession of a class A substance (heroin) with intent to distribute, G. L. c. 94C, § 32(*a*).[1] The defendant now appeals from these convictions, claiming, among other things, that the admission of a ballistics certificate violated his right of confrontation under the Sixth Amendment to the United States Constitution, that the judge erred in denying his motion to suppress evidence, and that he was denied the right to a speedy trial. We affirm.

*Background.* Brockton police officers, acting on warrants to arrest the defendant and on a witness's identification of the defendant as the perpetrator of a domestic assault, pulled over a Ford Explorer after recognizing both the Ford Explorer and the defendant passenger. They arrested the defendant and, in a search of his person incident to his arrest, recovered a gun, ammunition, a knife, twenty-nine bags of heroin, and $375.

*Discussion.* 1. *Ballistics certificate.* At trial, the judge admitted in evidence, over the defendant's objection,[2] a certificate from a qualified ballistics expert that the gun and cartridges seized from the defendant were a working firearm and ammunition. See G. L. c. 140, § 121A. There was no error. In this case, which concerned firing the gun to determine its operability, the certificate was a "record of a primary fact made by a public officer in the performance of [an] official duty" that did not violate the defendant's rights under the confrontation clause of the Sixth Amendment. *Commonwealth* v. *Verde*, 444 Mass. 279, 283 (2005), quoting from *Commonwealth* v. *Slavski*, 245 Mass. 405, 417 (1923). Specifically, the certificate recorded the following salient primary facts: (1) the weapon had a barrel length of three and five-eighths inches, (2) it was test fired suc-

---

[1] The defendant also entered guilty pleas on the habitual offender count of the firearm possession charge, G. L. c. 269, § 10G(*b*), and the subsequent offense count of the possession with intent to distribute charge, G. L. c. 94C, § 32(*b*).

[2] The defendant objected: "Obviously, this officer wasn't the individual that did the test firing, it was sent out. I don't see anyone here from the state lab that can verify what the document's supposed to represent. So I'm going to object to [t]his line of testimony with regard to the certificate and what it means." Because we conclude that there was no error, we need not address the Commonwealth's strained assertion that this language failed to preserve an objection based on the Sixth Amendment and *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004).

cessfully, and (3) there were fourteen live cartridges, five of which were tested. These facts suffice to establish that the tested items were a working firearm and ammunition within the meaning of the statute. See G. L. c. 140, § 121. Notwithstanding the use of the word "opinion" in the preprinted portion of the certificate, the statement that the provided items were a firearm and ammunition was not a prohibited expression of opinion, judgment, or discretion, but rather a summary of the established and admissible primary facts that bear on the question whether the weapon and cartridges are a firearm and ammunition within the meaning of the statute.[3] The recitation here was no more a statement of opinion than the recitation of drug weight and composition on a drug certificate. See *Commonwealth* v. *Verde*, *supra* (drug analysis certificates not discretionary or based on opinion, but rather state results of well-recognized scientific test).[4]

2. *Remaining issues.* The defendant maintains that the police had no probable cause to arrest him and that the evidence recovered pursuant to the search incident to his arrest should have

---

[3]Even were we to conclude that the admission of the certificate could be deemed error, it appears likely to qualify as harmless beyond a reasonable doubt. See *Commonwealth* v. *Galicia*, 447 Mass. 737, 746 (2006). As the judge instructed the jury, the ballistics certificate was entered only as prima facie evidence. Furthermore, the jury observed the gun and ammunition, and were entitled to conclude on that basis alone that the firearm was operable. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 204 (1965) (where gun admitted as exhibit, jury could have found, without expert testimony, gun capable of discharging bullet as required by statute). We note, without any imputation of relevance, that the defendant has not argued, nor does the record contain any suggestion, whether any alterations or adjustments to the firearm were made after the firearm was seized or in conducting the test of the firearm. Cf. *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 220 (1950) (character as firearm not lost when relatively slight repair, replacement, or adjustment will make it effective weapon); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 403 (1998) (same).

[4]General Laws c. 140, § 121A, requires that the individual certifying that an item is a firearm be previously qualified as an expert in a court proceeding. This provision supplies the same level of reliability as the requirement, contained in G. L. c. 111, § 13, that an individual certifying the composition of a narcotic be a qualified analyst in the Department of Public Health, the Drug Enforcement Administration of the United States Department of Justice, or the University of Massachusetts Medical School. In neither case does the applicable statute transform the certificate from a "record of a primary fact" into an opinion triggering the right to confrontation.

been suppressed.[5] However, the record amply supports the motion judge's finding that the police recognized the passenger of the Ford Explorer as the person named in the warrants and alleged to have committed a domestic assault earlier in the day. Although Officer LeGrice's and Detective Khoury's testimony was somewhat conflicted on how they came to this realization, we defer to the motion judge in such matters of credibility. See *Commonwealth* v. *Gutierrez*, 26 Mass. App. Ct. 42, 45 (1988).

The defendant also claims that 1,311 days[6] elapsed from the date of his arraignment, April 30, 2002, through the date his trial began, November 30, 2005, and that this justifies dismissal of his indictments pursuant to Mass.R.Crim.P. 36(b), 378 Mass. 909 (1979), the Sixth Amendment to the United States Constitution, and art. 11 of the Massachusetts Declaration of Rights. The Commonwealth has met its burden by showing that at least 996 days of the total of 1,311 days' delay were properly excludable; thus, we need not consider whether additional periods are excludable. Although the defendant argues that he instructed his lawyers to request a speedy trial at various points throughout the case, the judge was "entitled to accept the representations of counsel on behalf of [the defendant]" where the defendant made no effort to bring his dissatisfaction to the court's attention until June 1, 2005. See *Commonwealth* v. *McCants*, 20 Mass. App. Ct. 294, 300 & n.7 (1985). Nor is there any basis for a constitutional speedy trial claim. See *Commonwealth* v. *Amidon*, 428 Mass. 1005, 1010 (1998).

The defendant, in his pro se brief, makes numerous additional assertions of error. These are either unsupported by coherent appellate argument and applicable legal authorities, see Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), or entirely without legal merit.

*Judgments affirmed.*

---

[5]The arguments regarding the lack of probable cause to arrest and the failure to provide a speedy trial are asserted pursuant to *Commonwealth* v. *Moffett*, 383 Mass. 201, 207-209 (1981), in the brief filed by defendant's counsel and in a pro se brief filed by the defendant.

[6]We assume, without deciding, that the delay was 1,311 days, as argued by the defendant.