COMMONWEALTH *vs.* ISAIAH I. BROWN.

No. 08-P-968.

Suffolk. May 6, 2009. - October 8, 2009.

Present: GRASSO, COHEN, & FECTEAU, JJ.

*Firearms. Practice, Criminal,* Confrontation of witnesses, Psychiatric exam-
ination. *Constitutional Law,* Confrontation of witnesses. *Witness,* Psychiatric
examination.

At the trial of a complaint charging possession of a firearm without a license,
the judge erred in admitting in evidence a ballistics certificate without pro-
viding the defendant an opportunity to cross-examine the certifying ballisti-
cian; where the certificate was the only evidence enabling the Commonwealth
to meet its burden of proof that the pistol was a working firearm, the error
required reversal of the verdict. [362-364]

At a criminal trial in which the defendant raised the defense of lack of criminal
responsibility, the Commonwealth was entitled to rely on and introduce an
expert's opinion in rebuttal, even though it was based on a postarraignment
court-ordered psychological examination that the expert performed previ-
ously, rather than a new examination ordered pursuant to Mass.R.Crim.P.
14(b)(2)(B) [364-366]; further, any error in the admission of the expert's
testimony regarding the defendant's own testimonial statements was harm-
less, where the defendant, having proffered expert testimony based on compar-
able statements, effectuated a limited waiver of his privilege against self-
incrimination and opened the door to rebuttal testimony from the Com-
monwealth's expert [366-368].

A criminal defendant failed to demonstrate that the trial judge, by prohibiting
reference at trial to a dismissed charge, erroneously restricted the defend-
ant's cross-examination of the Commonwealth's expert. [368-369]

COMPLAINT received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on September 28, 2006.

After transfer to the Central Division of the Boston Municipal
Court Department, the case was tried before *Robert J. Mc-
Kenna,* J.

*Christopher L. Maclachlan* for the defendant.

*Zachary Hillman,* Assistant District Attorney (*Christine Walsh,*
Assistant District Attorney, with him) for the Commonwealth.

COHEN, J. The defendant appeals from his conviction of pos-

session of a firearm without a license, pursuant to G. L. c. 269, § 10(*a*). The charge arose from an incident, on September 27, 2006, when two police officers observed the defendant standing on a sidewalk with a pistol visible in his waistband. The pistol contained no bullets.

At trial, the primary issue was the defendant's criminal responsibility. As originally briefed, the defendant's appellate arguments related only to that issue and, in particular, the testimony of the forensic psychologist on whom the Commonwealth relied. However, subsequent to oral argument, and shortly after the issuance of the decision of the United States Supreme Court in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), the defendant filed a motion seeking leave to file a supplemental brief that he submitted with his motion, arguing that the Commonwealth's reliance on a ballistics certificate to meet its burden of proving that the pistol was a firearm within the meaning of the Massachusetts gun statutes violated his right of confrontation under the Sixth Amendment to the United States Constitution. The Commonwealth filed an opposition requesting that we deny the motion and also addressing the merits of the defendant's new argument.

In the circumstances of this case, the ballistics certificate issue is of sufficient import that we exercise our discretion under Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), to consider it even though it was not raised in the defendant's original brief. See *Dean* v. *Springfield*, 38 Mass. App. Ct. 910, 910-911 (1995). Although there is no merit to the initial issues raised by the defendant, we conclude that the admission of the ballistics certificate without the opportunity to cross-examine the ballistician requires that his conviction be reversed.

1. *Ballistics certificate.* Immediately before trial, the Commonwealth presented a motion in limine seeking permission to rely on a certificate from a police department ballistics expert to establish that the pistol was a working firearm.[1] See G. L. c. 140, § 121A.[2] Citing to *Crawford* v. *Washington*, 541 U.S. 36 (2004), the defendant opposed the Commonwealth's motion, on the ground that admitting the ballistics certificate without affording

---

[1]The dimensions of the pistol are not at issue. It was admitted in evidence and observed by the jury.

[2]Section 121A, as appearing in St. 1987, c. 300, provides that a "certificate

him an opportunity to cross-examine the person who tested the gun and certified its operability would violate his constitutional right of confrontation. The judge rejected the defendant's argument and allowed the Commonwealth's motion. During the Commonwealth's case-in-chief, the certificate was admitted in evidence over the defendant's renewed objection.

As the Commonwealth concedes, in light of *Melendez-Diaz, supra,* the admission of the ballistics certificate without the opportunity to cross-examine the certifying ballistician was constitutional error.[3] As the Commonwealth further concedes, because the issue was properly preserved at trial, the applicable standard of review is whether, on the whole record, the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Miles,* 420 Mass. 67, 73 (1995).

We are unpersuaded that the Commonwealth has met its burden to show that the erroneously admitted evidence did not contribute to the verdict. See *Commonwealth* v. *Charros,* 443 Mass. 752, 765, cert. denied, 546 U.S. 870 (2005). Notwithstanding the emphasis at trial on the question of the defendant's criminal responsibility, the functionality of the gun was not conceded by the defendant, and other than the certificate, there was no competent evidence from which the jury reasonably could draw the inference that the weapon could fire. By itself, the admission of the gun in evidence did not establish that it was operable, see *Commonwealth* v. *Nieves,* 43 Mass. App. Ct. 1, 3 (1997), and other circumstantial evidence of operability was lacking. When it was seized from the defendant, the gun did not contain any bullets. Compare *Commonwealth* v. *Fancy,* 349 Mass. 196, 204 (1965); *Commonwealth* v. *Stallions,* 9 Mass. App. Ct. 23, 26 (1980). Nor was there any evidence that the gun had been fired at any time, much less at the time of the offense. Compare *Commonwealth* v. *Sperrazza,* 372 Mass. 667, 670 (1977); *Commonwealth* v. *Sylvester,* 35 Mass. App. Ct. 906, 907 (1993).

---

by a ballistics expert . . . shall be prima facie evidence of his findings as to whether or not the item furnished is a firearm" within the meaning of G. L. c. 140, § 121.

[3]In *Morales* v. *Massachusetts,* 129 S. Ct. 2858 (2009), the United States Supreme Court vacated the judgment of this court in *Commonwealth* v. *Morales,* 71 Mass. App. Ct. 587 (2008), a case allowing the admission of a ballistics certificate without the opportunity to cross-examine the ballistician, and remanded the case to this court for further consideration on the basis of *Melendez-Diaz.*

Nevertheless, the Commonwealth claims that the following other evidence amply proved that the gun was a working firearm: the testimony of one of the arresting officers that he owned several firearms and that the weapon taken from the defendant was a "big gun"; the testimony of the other arresting officer that he "cleared" the weapon to make sure there was no live ammunition inside; and the testimony of the defendant's psychiatric witness, Dr. David Rosmarin, that the defendant told him that he had removed the bullets from the gun before putting it in his pants and going out with it. However, none of this evidence was probative that the gun was operable.

Furthermore, an unusual slant to this case was that the capacity of the gun to fire was of no apparent concern to this defendant. Dr. Rosmarin testified that the defendant thought that the unloaded gun was a "prop," the sight of which would stop anyone from trying to kill him. Dr. Stacey Fiore, the forensic psychologist called by the Commonwealth, testified that the defendant told her that he bought the gun on the street after his cousin had been murdered, that it did not have bullets, but that he carried it when he left the house because he felt that if people knew that he had a gun he would be less likely to be harmed.

A constitutional error is harmless beyond a reasonable doubt only if it "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Diaz*, 453 Mass. 266, 275 (2009), quoting from *United States* v. *Agurs*, 427 U.S. 97, 112 (1976). Here, we have no such assurance. The erroneously admitted ballistics certificate was the only evidence enabling the Commonwealth to meet its burden of proof that the pistol was a working firearm. Its admission cannot be characterized as harmless beyond a reasonable doubt and would mandate relief even under a less onerous standard of review. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

2. *Criminal responsibility issues.* Because the Commonwealth is entitled to retry the defendant, see *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 45 (1992); *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995), and similar issues may present themselves at a retrial, we comment on the remaining arguments made by the defendant.

In support of his defense of lack of criminal responsibility, the

defendant introduced the testimony of Dr. Rosmarin. In rebuttal, the Commonwealth introduced the testimony of Dr. Fiore, who had examined the defendant at Bridgewater State Hospital pursuant to a court order, issued at the time of the defendant's arraignment, for assessment of both his competence and criminal responsibility, in accordance with G. L. c. 123, § 15(b).[4] Although Dr. Fiore and Dr. Rosmarin agreed that, at the time of the incident leading to his arrest, the defendant was suffering from mental illness, they differed as to its severity and effect. A major point of contention was whether he was capable of appreciating the wrongfulness of carrying the gun. On that score, both experts testified concerning statements made by the defendant with respect to his mental state at the time of the offense.

The defendant does not dispute that, on giving notice of his intent to rely on a defense of lack of criminal responsibility, the Commonwealth could have obtained an order requiring him to undergo a mental examination and thereby could have developed evidence to rebut his expert testimony on the subject. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753 (1977); Mass.R.Crim.P. 14(b)(2)(B), 378 Mass. 874 (1979). He claims, however, that the Commonwealth should not have been permitted to introduce Dr. Fiore's testimony because it was based on an examination that predated the defendant's notice under Mass.R.Crim.P. 14(b)(2)(A). He also claims that portions of Dr. Fiore's trial testimony violated G. L. c. 233, § 23B, and that the judge erroneously restricted the defendant's cross-examination of Dr. Fiore by ruling that there should be no reference at trial to a dismissed charge.[5] None of these arguments has merit.

a. *Admission of Dr. Fiore's testimony.* The Commonwealth was entitled to rely on and introduce Dr. Fiore's opinion in rebuttal even though it was based on the postarraignment court-ordered psychological examination that she performed, rather than a new examination ordered pursuant to rule 14(b)(2)(B). There is nothing in our rules or in *Blaisdell* v. *Commonwealth*,

---

[4]It was defense counsel who initiated the inquiry into the defendant's mental state. At counsel's request, the court psychologist performed a competency screening pursuant to G. L. c. 123, § 15(a). Then, after hearing, the judge ordered the § 15(b) exam for competency and criminal responsibility.

[5]In his reply brief and a postbriefing letter, the defendant waived an additional argument concerning the Commonwealth's compliance with discovery obligations.

*supra*, requiring that the Commonwealth use expert testimony derived from an examination performed subsequent to the defendant's notice under rule 14(b)(2)(A).[6] Indeed, in a case like this one where a court-ordered examination for criminal responsibility already has taken place, another examination may well be unnecessary and a poor use of limited resources.[7]

Contrary to the defendant's position, the sequence of examinations did not result in any improper or unfair argument by the prosecutor. Both sides appropriately attempted to use the timing and order of examinations to their advantage. On the one hand, the prosecutor argued that Dr. Fiore's examination, conducted closer in time to the crime, was a more accurate indicator of the defendant's mental state at the time, and that statements made by the defendant and his friends to Dr. Rosmarin at a later date were less reliable or may have been embellished to emphasize the degree of the defendant's impairment. On the other hand, the defense argued that Dr. Fiore's opinion was flawed and incomplete because she did not have access to additional witnesses who later became available to be interviewed by Dr. Rosmarin. Ultimately, the competing opinions of these two witnesses were for the jury to weigh and evaluate.

b. *General Laws c. 233, § 23B.* Having introduced Dr. Ros-

---

[6]No issue is presented here regarding the Commonwealth's access to Dr. Fiore's report. Although the rules do not explicitly so provide, it would seem that the protections afforded by rule 14(b)(2)(B)(ii) and (iii) are necessary and appropriate regardless of the timing of a court-ordered psychiatric examination for criminal responsibility. Cf. *Vuthy Seng* v. *Commonwealth*, 445 Mass. 536, 545-548 (2005) (requirements of rule 14[b][2][B] are appropriate to apply to competency examinations, even though, by its terms, the rule applies only to the defense of lack of criminal responsibility). In this case, however, the defense somehow came into possession of Dr. Fiore's report early in the case and voluntarily supplied it to the Commonwealth, in February, 2007, in conjunction with plea negotiations. There is no suggestion that any redactions were made to conform with the spirit of rule 14(b)(2)(B)(iii). It was not until June 13, 2007, that the defendant filed his notice of intent to rely on the defense of lack of criminal responsibility under rule 14(b)(2)(A).

[7]The record indicates that financial constraints played a role in the Commonwealth's decision to rely on Dr. Fiore's examination. In August, 2007, the Commonwealth moved to continue the trial based on the unavailability of Dr. Fiore, who had just given birth and was on leave. The prosecutor explained that Dr. Fiore was an essential witness, because the Commonwealth could not pay for another expert to examine the defendant. After obtaining confirmation of Dr. Fiore's unavailability, the judge allowed the motion.

marin's opinion testimony, which was based on the defendant's testimonial statements, the defendant effectuated a limited waiver of his privilege against self-incrimination and opened the door to rebuttal testimony from Dr. Fiore so long as it was given in a manner consistent with the separate protections afforded by G. L. c. 233, § 23B. See *Blaisdell* v. *Commonwealth, supra* at 766; *Commonwealth* v. *Callahan,* 386 Mass. 784, 789 (1982).[8] See also Mass. G. Evid. § 511 note, at 127 (2008-2009).

Here, both Dr. Rosmarin and Dr. Fiore testified to statements-made by the defendant indicating that he was in knowing possession of the gun on the night of his arrest.[9] These statements were admissions to elements of the crime charged, see *Commonwealth* v. *O'Connell,* 432 Mass. 657, 663 (2000), and plainly within the protection of § 23B. However, because the defendant introduced the statements of Dr. Rosmarin, and the Commonwealth then introduced comparable statements from Dr. Fiore in its rebuttal, any error in the admission of Dr. Fiore's statements was harmless. See and compare *Commonwealth* v. *Callahan,* 386 Mass. 784, 790 (1982), with *Commonwealth* v.

---

[8]General Laws c. 233, § 23B, as amended by St. 1970, c. 888, § 27, states in relevant part: "[N]o statement made by a defendant therein subjected to psychiatric examination pursuant to sections fifteen or sixteen of chapter one hundred and twenty-three for the purposes of such examination or treatment shall be admissible in evidence against him on any issue other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged." A "confession" within the meaning of the statute is an inculpatory statement admitting some degree of guilt. *Blaisdell, supra* at 763.

[9]Dr. Rosmarin testified that the defendant told him that, on the evening of September 27, 2006, he retrieved the gun from a hiding place in reaction to learning that his friend's car had been torched; he thought he was unstoppable and no one could touch him; he got the gun, took out the bullets, and stuck it in his pants so anyone could see it. Dr. Rosmarin then opined that while the defendant knew he had a gun, he lacked a meaningful understanding of the wrongfulness or illegality of his behavior or an ability to contain himself.

Dr. Fiore testified that the defendant told her that for several months he customarily had carried the gun for protection when he left the house — even though it was unloaded — and that, on the evening in question, he learned his friend's car had been torched, retrieved the gun from its hiding place, and went to a place where he congregated with his friends. Dr. Fiore expressed the opinion that, despite being in a manic state, the defendant was able to appreciate the wrongfulness of carrying the gun and to conform his conduct to the requirements of the law.

*O'Connor*, 7 Mass. App. Ct. 314, 318 (1979). See also *Commonwealth* v. *Williams*, 30 Mass. App. Ct. 543, 551 (1991).

The defendant claims, however, that an additional statement recounted by Dr. Fiore went beyond anything mentioned in Dr. Rosmarin's testimony, and that its admission therefore cannot be characterized as harmless error. The statement in question, which Dr. Fiore cited as indicative of the defendant's ability to appreciate the wrongfulness of his conduct, was that on the evening in question, he knew he could get in trouble and could be arrested for carrying the gun.

Passing the question whether this issue was properly preserved,[10] Dr. Fiore's testimony was not palpably different from that of Dr. Rosmarin. Using slightly different words, defense counsel elicited testimony about the defendant's statement to Dr. Fiore during the direct examination of Dr. Rosmarin.[11] Furthermore, unlike the cases on which the defendant relies, *Commonwealth* v. *Martin*, 393 Mass. 781, 787 (1985), and *Commonwealth* v. *Callahan*, *supra*, the statements made by the defendant to the two experts were comparably inculpatory.[12]

c. *Scope of cross-examination.* The defendant argues that he was erroneously precluded, during his cross-examination of Dr.

---

[10]The defendant never objected or moved to strike this portion of Dr. Fiore's testimony. The transcript, as supplemented by the reconstruction of an inaudible argument at sidebar, reveals only that the defendant objected to Dr. Fiore's testimony *in its entirety* on the ground that it was based on an examination preceding the defendant's notice under rule 14(b)(2)(A). Although the defendant filed a motion in limine just prior to trial requesting a voir dire of Dr. Fiore so that objectionable statements could be screened out, he did not follow through when the judge declined to conduct a voir dire at that time, encouraged counsel to reach agreement on what should and should not come in evidence, and stated that he would address anything that they could not resolve.

[11]After Dr. Rosmarin testified that the defendant did not have a meaningful understanding that carrying the gun was legally wrong, counsel asked: "So when he told the doctors at Bridgewater after he was already heavily medicated, doctor, that he, you know, took the bullets out of the gun *and that he knew it might have been wrong or illegal to have a gun*, is that relevant or important in your overall opinion?" (Emphasis supplied.) In response, Dr. Rosmarin explained that he was not sure about the exact quotation, but that such a statement, made after the fact, would not detract from the defendant's lack of capacity at the time of the events.

[12]In *Martin, supra* at 783, the Commonwealth's expert testified that the defendant stated that he "knew he would get arrested," a statement that the Supreme Judicial Court viewed as tending to show that the defendant, indeed, shot the victim. Because the defense expert did not testify to *any* statements

Fiore, from exploring the fact that she had concluded that the defendant lacked criminal responsibility with respect to a charge of resisting arrest that had been dismissed early in the case. Before the jury were empanelled, the Commonwealth moved that the resisting arrest charge not be discussed because it would be too prejudicial. When the judge agreed, defense counsel attempted to explain that this was one of the reasons why a voir dire of Dr. Fiore would be important. As noted earlier, the judge ruled that there would be no voir dire, but that if the parties could not agree on the contents of Dr. Fiore's testimony, he would resolve any dispute. Thereafter, the defendant did not bring up the subject again, despite the fact that the judge's ruling was not unequivocal.

As it developed, defense counsel was not inhibited from exploring Dr. Fiore's two different conclusions about the defendant's criminal responsibility. During his examination of Dr. Rosmarin, counsel elicited from Dr. Rosmarin that Dr. Fiore's opinion contained a "major flaw" in that she found him not criminally responsible for another act that occurred seconds later. The judge overruled the Commonwealth's objections and allowed this area to be probed. Given that ruling, there was no reason for defense counsel to assume that he could not again raise the subject in a comparable manner when cross-examining Dr. Fiore. In any retrial, we assume that the defendant again will enjoy the opportunity to explore the alleged discrepancy in Dr. Fiore's opinion in a manner deemed appropriate by the trial judge.

3. *Conclusion.* On the basis of the constitutional error in the admission of the ballistics certificate, the judgment is reversed and the verdict is set aside.

*So ordered.*

made by the defendant concerning the crime, the Commonwealth's violation of § 23B could not be viewed as harmless. In *Callahan, supra* at 787, the Commonwealth's expert recounted that the defendant told him that "he picked up the gun and shot her, with the thought beforehand that 'shoot her, Callahan and you're . . . you're going to jail for murder.' " However, as shown by the excerpts from the *Callahan* briefs supplied to us by counsel for the defendant in the present case, Callahan's statements to the defense expert were that he had no memory of shooting the victim and was bent on committing suicide when he went for the gun. Because the statements to which the defense expert testified were not of the same inculpatory nature as those to which the Commonwealth's expert testified, the admission of the statements made to the Commonwealth's expert could not be deemed harmless.