COMMONWEALTH *vs.* EMMITT WARE.

No. 08-P-999.

Plymouth. November 6, 2009. - December 23, 2009.

Present: CYPHER, SIKORA, & FECTEAU, JJ.

*Practice, Criminal,* Motion to suppress, Confrontation of witnesses. *Search and Seizure,* Threshold police inquiry, Protective frisk, Reasonable suspicion. *Constitutional Law,* Investigatory stop, Search and seizure, Reasonable suspicion, Confrontation of witnesses. *Firearms. Evidence,* Ballistician's certificate.

A District Court judge properly denied the criminal defendant's motion to suppress evidence discovered after the pursuit of the defendant by a State police trooper, where the trooper had reasonable suspicion, based on his own knowledge and the defendant's actions, that the defendant was committing a crime, in that the defendant, on making eye contact with the trooper, clutched at an object under his shirt at his waist and began to flee. [55-56]

At the trial of a criminal complaint charging unlawful possession of a firearm, unlawful possession of a loaded firearm, and possession of ammunition without a firearm identification card, the erroneous admission in evidence of a ballistics expert's certificate of analysis of the firearm, ammunition, and a loaded magazine, without allowing the defendant an opportunity to cross-examine the ballistics expert, in violation of the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him, was not harmless beyond a reasonable doubt, where, in the absence of overwhelming evidence independent of the certificate, the erroneously admitted certificate may have contributed to the verdicts; therefore, this court reversed the defendant's convictions. [56-58]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on May 11, 2007.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J., and the case was tried before him.

*Andrea Harrington* for the defendant.

*Kristin Freeman,* Assistant District Attorney, for the Commonwealth.

FECTEAU, J. The defendant appeals from his District Court jury convictions of unlawful possession of a firearm, unlawful

possession of a loaded firearm, and possession of ammunition without a firearm identification card. On appeal, he contends that (1) the motion judge wrongly denied his motion to suppress and (2) the admission of the ballistics certificate in evidence violated his right to confront witnesses under the Sixth Amendment to the United States Constitution.[1] We affirm the denial of the motion to suppress but reverse the convictions because the admission of the ballistics certificate was not harmless beyond a reasonable doubt.

*Background.* The jury could have found the following facts. On May 1, 2007, at approximately 6:00 P.M., Trooper Eric Telford and Sergeant Steve Lopes of the State police gang unit drove an unmarked Crown Victoria automobile by the Laundromax Laundromat at the end of Arch Street in Brockton. The officers, dressed in black shirts with the word "Police" written on them, noticed a group of individuals standing together near the back door of the laundromat. The troopers drove up Arch Street and took a right into the back parking lot of the laundromat. Based on a recent encounter, Telford recognized the defendant, who was then seventeen years old. While Telford was still seated in the car, the defendant made eye contact with him, and the defendant's "eyes widened, his jaw dropped, he grabbed right above his waistband, an object above his waist under his t-shirt, and then he tried to run." His shirt got caught on a pylon, he freed it, and ran toward Exchange Street.

The officers followed the defendant in their vehicle until they came to a fence, at which point Telford left the car and chased the defendant on foot. During the chase, the trooper saw the defendant's right hand above his waistband appearing to hold something; Telford testified that based on his training and experience, he thought the defendant "was holding a handgun." During the chase, which lasted between thirty and forty-five seconds, Telford pursued the defendant along Exchange Street. The defendant jumped over a few fences and ran around a few buildings before Telford tackled him just west of 37 Exchange Street.

Telford searched the defendant immediately after tackling

---

[1]Additionally, he contends that error occurred in the jury instructions on constructive possession when a Commonwealth witness was permitted to opine on the ultimate issue and that he received ineffective assistance of counsel in several respects.

him but found nothing. Telford then backtracked the chase route and searched, or had another officer search, the areas where he had momentarily lost sight of Ware as he cautiously rounded corners. First, behind 37 Exchange Street where he "lost" sight of the defendant "for a couple of seconds," Telford recovered a metal-colored nine millimeter magazine loaded with ammunition, unsullied by debris, dirt, or signs of weathering, behind the house next to a parked motorcycle. Second, another officer located a loaded firearm on the east side of 30 Exchange Street; the firearm was partially hidden but observable under a metal box that was leaning up against the building. The officer saw it when he tilted the box back from the side of building, put his forehead up against the dwelling, and looked down. Like the magazine, the firearm "was free from dust or debris" and "did [not] appear weathered."[2] Telford stated that he had lost sight of the defendant "only a second or two" when going around that corner of the building.[3]

*Motion to suppress.* The defendant claims that the motion to suppress should have been granted because he was seized the moment the troopers drove into the driving lot and made eye-contact with him. Therefore, evidence of his reaction to the police, clutching movements at his waistband, his flight, and the gun and magazine should have all been suppressed because the police lacked reasonable grounds for suspicion that the defendant was committing a crime. We disagree.

A person is not seized until "a reasonable person would have believed that he was not free to leave." *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). See *Commonwealth* v. *DePeiza*, 449 Mass. 367, 370 (2007) ("officers did not seize the defendant when they first stepped out of their car"); *Commonwealth* v. *Nestor N.*, 67 Mass. App. Ct. 225, 228-229 (2006) (no seizure when police officer left van and said, in noncompulsory manner, "hang on a second . . . can I talk to you?"). Contrast *Commonwealth* v. *Barros*, 435 Mass. 171, 172, 174-176 (2001) (defendant seized when police officer got out of cruiser, pointed at defendant in presence of two other officers, and said, "Hey you. I wanna talk to you. Come here").

---

[2]The firearm was later unsuccessfully examined for fingerprints.

[3]Prior to the defendant's arrest in early June, a special task force used dogs to search this area of Exchange Street for guns.

Here, the judge found that as soon as the defendant made eye contact with the trooper, the defendant clutched at an object under his shirt at his waist and began to run, prior to which the trooper had neither gotten out of his car nor said anything. Seizure occurred only after the defendant fled and Telford began pursuing him. At that moment, the trooper had reasonable suspicion to believe the defendant was committing a crime, and the defendant's seizure was justified. The trooper knew the defendant and knew that he was too young to legally possess a firearm. The defendant exhibited nervous behavior in an area of frequent drug, gun, and gang activity; was in a group that was known to have carried guns; began to run prior to any direction by the police to stop or otherwise; and reached for an object at his waistband as he ran. See *Commonwealth* v. *DePeiza, supra* at 371 (factors such as presence in high crime area and defendant's positioning his arm straight against his side justified reasonable suspicion defendant possessed concealed firearm); *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 782-783 (2005) (police justified in fearing for safety after defendant reached for waistband as he walked away); *Commonwealth* v. *Nestor N., supra* at 231 (police had reasonable suspicion to seize defendant after observing him clutch hip). The trooper had reasonable suspicion based on his own knowledge and the defendant's actions that the defendant was committing a crime. The motion judge properly denied the defendant's motion to suppress.

*Ballistics certificate.* "To constitute a 'firearm' within the meaning of G. L. c. 140, § 121, and hence within the prohibition of G. L. c. 269, § 10(*a*), the 'instrument in question must be (1) a weapon, (2) capable of discharging a shot or bullet, and (3) under a certain length.' " *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 2 (1997), quoting from *Commonwealth* v. *Raedy*, 24 Mass. App. Ct. 648, 652 (1987). To prove that the handgun met this definition, the Commonwealth introduced a certificate from a ballistics expert under the provisions of G. L. c. 140, § 121A. The admission of the ballistics certificate without allowing the defendant an opportunity to cross-examine the ballistics expert has been ruled to be constitutional error. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), and *Morales* v. *Massachusetts*, 129 S. Ct. 2858 (2009). The defendant properly preserved this issue by objecting when the Commonwealth introduced the

certificate during the trial. Therefore, we examine the error to determine whether it was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U.S. 18, 24 (1967).

In determining whether the error was harmless beyond a reasonable doubt, we ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991), quoting from *Chapman* v. *California, supra.* For making this determination, the Supreme Judicial Court has provided a scoreboard, intended to be neither exclusive nor exhaustive, against which such a determination can be tested: "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions." *Commonwealth* v. *Isabelle*, 444 Mass. 416, 419 (2005), citing *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983). See *Commonwealth* v. *Diaz*, 453 Mass. 266, 274 (2009).

Here, the police found a firearm loaded with a round of ammunition in the chamber and a loaded magazine, all admitted as exhibits during the trial. These two items had matching serial numbers and were found in separate places on the same chase route. Moreover, the defendant's flight from the police was evidence of his consciousness of guilt. Last, Telford testified, without objection, that rounds of ammunition found in the gun and magazine had been test fired, but not by the officers. While this evidence and the inferences that can be reasonably drawn therefrom would likely be sufficient to support the Commonwealth's burden to produce evidence to overcome a motion for a required finding of not guilty (see *Commonwealth* v. *Fancy*, 349 Mass. 196, 204 [1965], and *Commonwealth* v. *Stallions*, 9 Mass. App. Ct. 23, 25-26 [1980]), we are not convinced that this evidence was of such strength to "conclude that the admission of the ballistics certificate . . . did not contribute to the findings." *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 734 (2009). See *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 3 (1997), and *Commonwealth* v. *Brown*, 75 Mass. App. Ct. 361 (2009).

Of particular concern to us is the prosecutor's emphasis on the evidentiary importance of the certificate and the fact he solely relied on it to prove that the gun and bullets met the statutory

definition of a firearm. See *Commonwealth* v. *Isabelle, supra* (identifying "the frequency of the reference" as one factor to consider in evaluating harmlessness beyond reasonable doubt); *Commonwealth* v. *Hollister, supra* at 731. Specifically, he stated, "you can accept this prima facie evidence that these items were tested by the state police crime lab. . . . And according to an expert ballistician, of the state police, that's a gun. So that's one of the elements the Commonwealth has to prove to you in order for you to find the Defendant guilty." A moment later, he stated, "do we know it was a gun? Of course we do. Because you can look at the certificate from the state police."[4] Therefore, in the absence of overwhelming evidence independent of the certificate, the erroneous admission of the certificate may have contributed to the verdicts. Consequently, the error was not harmless beyond a reasonable doubt, and the convictions must be reversed.[5]

> *Order denying motion to suppress affirmed.*
>
> *Judgments reversed.*
>
> *Verdicts set aside.*

---

[4]The defendant did not contest operability at trial; his theory was that he did not possess the firearm. While this factor weighs in favor of the Commonwealth, we do not give it much weight in light of the then-existing law under *Commonwealth* v. *Verde*, 444 Mass. 279 (2005). See *Commonwealth* v. *Hollister, supra* at 732. The prevailing law at the time of trial supported the admissibility and probative force of the certificate and would have caused competent counsel to regard any contest of the issue as futile.

[5]Because we hold that the harmful error in the admission of the ballistics certificate entitles the defendant to a new trial, we need not review the other issues that he raises (with the exception of his claim that his motion to suppress evidence was incorrectly denied); it is not clear to us that on any retrial the evidence and the other issues raised here by the defendant will develop similarly or be repeated.