# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* JEFFSON CHARLES. No. 10-P-248. January 4, 2012. *Firearms. Search and Seizure,* Threshold police inquiry, Protective frisk. *Threshold Police Inquiry. Constitutional Law,* Search and seizure, Confrontation of witnesses, Double jeopardy, Right to bear arms. *Evidence,* Ballistician's certificate. *Error, Harmless. Collateral Estoppel. Practice, Criminal,* Motion to suppress, Confrontation of witnesses, Harmless error, Double jeopardy, Lesser included offense, Collateral estoppel. Further appellate review granted, 461 Mass. 1108 (2012).

Jeffson Charles, the defendant, was convicted of unlawfully carrying a firearm, G. L. c. 269, § 10(*a*), and unlawfully carrying a loaded firearm, G. L. c. 269, § 10(*n*). He was also found in violation of the armed career criminal statute, G. L. c. 269, § 10G(*a*). The jury acquitted him of unlawful possession of ammunition. See G. L. c. 269, § 10(*h*). Here, the defendant alleges that a series of errors marred his trial and preclude his retrial. In part, we agree.

*Motion to suppress.* The motion judge did not err in denying the defendant's motion to suppress the firearm. When reviewing motions to suppress, we accept the judge's findings of fact unless clearly erroneous, but independently review her conclusions of law. *Commonwealth* v. *James,* 427 Mass. 312, 314 (1998). Here, the defendant makes no claims that the judge's factual findings were erroneous.

The arresting officer's exit order and subsequent patfrisk of the defendant were permissible because the officer had an objectively reasonable belief that his safety, and the safety of other officers, was in danger. See *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 662-663, 665 (1999); *Commonwealth* v. *Torres,* 433 Mass. 669, 673-674 (2001); *Commonwealth* v. *Stampley,* 437 Mass. 323, 326 (2002); *Commonwealth* v. *Bostock,* 450 Mass. 616, 619-621 (2008). When the officer, whose testimony the motion judge credited, approached the car in which the defendant was a passenger, the officer had credible information that there might be a firearm in the car.[1] As the weapon had not been recovered and the possibility of its presence had not been eliminated, the officer had a reasonable fear that it might be within the defendant's reach.

Before the officer actually reached the defendant's side of the vehicle, he saw that the defendant's passenger door was open between six and twelve inches and, as a result, feared that the defendant would either flee or attack. *Bostock,* 450 Mass. at 622-623. Moreover, as the officer approached, the defendant made furtive gestures towards his waistband and continued those gestures when he was outside the vehicle. In addition, the defendant did not

---

[1]During the stop, the police recognized the driver (not the defendant) as someone who had three outstanding warrants and with respect to whom they had received credible information that he possessed a stolen handgun.

heed the officer's order to keep his hands out of his waistband. Indeed, when the defendant exited the automobile, he grabbed toward his pants and appeared to be guarding something in them. The defendant's nervous and excited manner during the encounter, his furtive gestures, and the officer's credible information about the firearm gave him reasonable suspicion that the defendant was armed and dangerous. Viewed objectively, therefore, the facts and circumstances gave rise to "a heightened awareness of danger," which justified the officer's exit order and ensuing patfrisk. *Stampley*, 437 Mass. at 326, quoting from *Gonsalves*, 429 Mass. at 665.

*Admission of certificates of ballistics analysis.* At trial, certificates of ballistics analysis were introduced to show that the pistol found in the defendant's pants worked and was capable of firing a projectile, an essential element of the Commonwealth's case. No other evidence to that effect was presented. See, e.g., *Commonwealth* v. *Muniz*, 456 Mass. 166, 172 (2010); *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 733 (2009). The Commonwealth concedes that the certificates were testimonial. Consequently, their admission without live testimony from the ballistician and the laboratory analyst who produced them was error. *Commonwealth* v. *Morales*, 76 Mass. App. Ct. 663, 665 (2010). See *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305 (2009); *Morales* v. *Massachusetts*, 557 U.S. 930 (2009).

The error was not harmless beyond a reasonable doubt. Contrast, e.g., *Commonwealth* v. *Depina*, 456 Mass. 238, 248-249 (2010). That the pistol was loaded with ammunition when the officers found it is, alone, insufficient to prove that it was operable. See *Muniz, supra*; *Hollister, supra*. A new trial is therefore required. *Commonwealth* v. *Vasquez*, 456 Mass. 350, 362-363 (2010).[2]

*Double jeopardy.* The defendant makes two double jeopardy claims, the first of which is that unlawfully carrying a firearm, see G. L. c. 269, § 10(*a*), is a lesser included offense of unlawfully carrying a loaded firearm, G. L. c. 269, § 10(*n*), and therefore, we must vacate the § 10(*a*) conviction. But offenses are not duplicative if "the Legislature has specifically authorized cumulative punishment under two statutes, even if the two statutes proscribe the same conduct." *Commonwealth* v. *Alvarez*, 413 Mass. 224, 232 (1992). Section 10(*n*) is an example of the Legislature's specific authorization, for it provides an additional sentence for violation of § 10(*a*) by means of a loaded firearm. That sentence runs, in the words of the statute, "from and after the expiration of the sentence for the violation of paragraph (*a*)." G. L. c. 269, § 10(*n*), inserted by St. 2006, c. 48, § 7.

The second argument, though, is that retrying the defendant on the loaded firearm charge is barred by his acquittal of the charge of possessing ammunition. Here, we agree. The only ammunition the defendant was charged with possessing was the ammunition found in the pistol. In those circumstances, and as the Supreme Judicial Court recently held in *Commonwealth* v. *Johnson*, 461 Mass. 44, 51-54 (2011), the possession charge was a lesser included offense of the loaded firearm charge.

---

[2]Unlike admission of the certificates of ballistics analysis, the certified records from the house of correction and the District Court clerk's office were properly admitted to establish a violation of G. L. c. 269, § 10G(*a*). Those records are business records because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," and as such, they are not testimonial. *Melendez-Diaz*, 557 U.S. at 324.

The basic rule is that a defendant who has been prosecuted for a lesser offense based on conduct that must be proved to convict him of a greater offense cannot subsequently be prosecuted for the latter. See *Grady* v. *Corbin*, 495 U.S. 508, 521 (1990) ("[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted"); *Commonwealth* v. *Woods*, 414 Mass. 343, 350-351, cert. denied, 510 U.S. 815 (1993) ("If . . . the prosecution needed to show that . . . the first offense was an essential element of the second, then the prosecution [for the second offense] would be barred under Massachusetts law, see *Costarelli* [v. *Commonwealth*, 374 Mass. 677, 683 (1978)] [double jeopardy bars subsequent prosecution for lesser included offense], as well as under *Grady*[, *supra*]").

In this case, the same result obtains on a nonconstitutional level under the doctrine of issue preclusion, one component of a broader doctrine sometimes called collateral estoppel. "The doctrine of collateral estoppel may work in two ways. First, it may bar totally a subsequent prosecution if one of the issues necessarily decided at the first trial is an essential element of the alleged crime in the second trial. Second, even if a prosecutor may proceed to a second trial, the doctrine may bar the introduction of certain facts determined in the defendant's favor at the first trial. . . . The doctrine of collateral estoppel will preclude either the subsequent prosecution or the introduction or argument of certain facts, only if the jury could not have based their verdict rationally on an issue other than the one the defendant seeks to foreclose. . . . Whenever the doctrine of collateral estoppel is raised by a defendant, the task of the court is to decide exactly what issues were, or should have been, determined at the first trial. . . . Such inquiry must be conducted in a realistic and practical manner by reviewing the proceedings as a whole." *Commonwealth* v. *Benson*, 389 Mass. 473, 478, cert. denied, 464 U.S. 915 (1983).[3] In the first trial in this case, a jury determined that the defendant did not possess the ammunition the Commonwealth sought to prove the pistol contained. In a new trial, the doctrine of issue preclusion prevents the Commonwealth from attempting to prove indirectly an issue the jury directly resolved in the defendant's favor in the first.

*Second Amendment.* We are not persuaded by the defendant's claim that G. L. c. 269, § 10(*a*) and (*n*), violates the Second Amendment to the United States Constitution. In the first place, the defendant's claim appears to be that any State regulation of firearms violates the Second Amendment. However, neither *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), nor *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010), the cases on which he relies, prohibits States from imposing reasonable regulations on firearm possession. See *Heller*, *supra* at 630-632, 636; *McDonald, supra* at 3047. See also *Commonwealth* v. *Powell*, 459 Mass. 572, 584-586 (2011). Moreover, and perhaps more important, the defendant makes no claim that he would have been denied the license or permits necessary to carry a firearm had he applied for either of them, see *id.* at 590; *Commonwealth* v. *Wallace*, 460 Mass. 118, 122-123 (2011), or that a denial of any application he made because of his prior convictions of "violent

---

[3]To be sure, there is considerable overlap between the constitutional and the nonconstitutional reach of the doctrine of collateral estoppel. See generally *Ashe* v. *Swenson*, 397 U.S. 436, 444 (1970).

crime[s]," see G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8; G. L. c. 269, § 10G(*a*), (*e*), inserted by St. 1998, c. 180, § 71, would have been improper. Compare *McDonald, supra* (nothing in *Heller* or *McDonald* casts "doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons' ").

On the indictment charging the carrying of a firearm without a license, the judgment is reversed and the verdict is set aside. On the indictment charging the carrying of a loaded firearm, the judgment is reversed, the verdict is set aside, and judgment is to enter for the defendant. On the indictment charging a violation of the armed career criminal statute, the judgment is reversed and the finding is set aside.

*So ordered.*

*Charles Allan Hope* for the defendant.

*Stephen C. Hoctor*, Assistant District Attorney, for the Commonwealth.