## Commonwealth *vs.* Jason Barbosa.

No. 09-P-610.

Norfolk. February 18, 2010. - August 11, 2010.

Present: Cypher, Brown, & Rubin, JJ.

Further appellate review granted, 458 Mass. 1112 (2011).

*Controlled Substances. Firearms. Practice, Criminal,* Required finding, Confrontation of witnesses, Harmless error. *Evidence,* Certificate of drug analysis, Ballistician's certificate.

At the trial of indictments charging the defendant with, inter alia, unlawfully having a firearm under his control in a motor vehicle, evidence that the defendant was traveling alone in an automobile that, although registered to his mother, he maintained and frequently operated; that the defendant glanced repeatedly at the location of the firearm during the traffic stop; that the defendant's mother denied ownership of the firearm; and that items that appeared to be linked to the defendant were in the vehicle and in the trunk, was sufficient to sustain the defendant's conviction. [342-343]

At the trial of indictments charging, inter alia, possession of marijuana, the erroneous admission in evidence of certificates of drug analysis, without accompanying testimony by the analyst who created them, in violation of the defendant's constitutional right to confront witnesses against him, could not be said to be harmless beyond a reasonable doubt, where there was no evidence other than the certificate that the substance seized from the automobile that the defendant was driving was marijuana. [343-345]

At the trial of indictments charging the defendant with, inter alia, unlawfully having a firearm under his control in a motor vehicle and unlawful possession of ammunition, the erroneous admission in evidence of a certificate of ballistics analysis, without accompanying testimony by the analyst who created it, in violation of the defendant's constitutional right to confront witnesses against him, was harmless beyond a reasonable doubt, where the other evidence of guilt (i.e., that the revolver was found loaded; that the revolver and six live rounds were submitted for testing, that five rounds were returned intact with one spent round, as well as testimony that explained the evidence and test firing), coupled with a lack of emphasis on the certificates, was so overwhelming as to nullify any effect the improperly admitted evidence might have had on the fact finder [345-347]; moreover, the evidence that the revolver was found loaded with bullets and that one round was used in test firing the revolver overwhelmingly proved that the ammunition was designed for use in a firearm [347].

INDICTMENTS found and returned in the Superior Court Department on February 16, 2007.

The cases were tried before *Janet L. Sanders*, J.

*Alison R. Bancroft* for the defendant.

*Alexei Tymoczko*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Jason Barbosa, was convicted by a Superior Court jury in June, 2008, of unlawfully having a firearm under his control in a motor vehicle, G. L. c. 269, § 10(*a*); unlawful possession of ammunition, G. L. c. 269, § 10(*h*)(1); and possession of marijuana, G. L. c. 94C, § 34. In the following jury-waived trial, the defendant was found guilty of the subsequent offender charges related to the firearm and marijuana convictions.[1] On appeal, the defendant argues that the evidence was insufficient to prove that he had knowledge or control of the firearm. He also challenges the Commonwealth's reliance on drug analysis certificates for the marijuana and the ballistics certificate for the revolver, invoking the principles established in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009).[2] We reverse the defendant's conviction of possession of marijuana, and we affirm the convictions of possession of a firearm and ammunition.

*Facts.* Situated in a cruiser in an emergency cut-out on route 24 in Randolph at about 8:50 P.M. on December 8, 2006, State police Troopers Robert Lima and Michael Guerriero stopped a car driven by the defendant. They had observed the car swerving from one side of the middle lane to the other, high-beam headlights flashing, and, as it passed them, they noticed that the car had no front license plate. As they caught up to the car, they observed the car's dark tinted windows and altered exhaust. As the car stopped, they saw that one of the right rear lights was not working.

Trooper Lima approached the driver's side, with Trooper Guerriero behind him, and asked for the defendant's license and registration. The defendant was alone in the car. Trooper Lima detected an odor of marijuana. Trooper Lima described the defendant as being very nervous and fidgety during the brief conversation when the defendant produced his license and the

---

[1]The defendant also was found responsible on charges of license plate violations, G. L. c. 90, §§ 6 and 6C.

[2]The defendant does not challenge the search of the vehicle.

car's registration.[3] To determine whether the dark tinted windows were within legal limits, Trooper Lima took a test instrument from the cruiser and went back to the car on the passenger side, where he found that window lowered, conducted the test, and determined that the light transmitted was above the minimum requirement. He intended to test a rear window which appeared darker, but was told the rear windows could not be lowered. Trooper Lima also noticed that the odor of marijuana was stronger than he had previously detected. The defendant appeared more nervous and turned his body ninety degrees, looking into the rear seat a couple of times.

Trooper Lima asked whether he could search the interior of the car. The defendant gave permission and said that he would stand outside. When the defendant got out of his car, Trooper Lima pat frisked him and found a BlackBerry Smartphone cellular telephone in one pants pocket and a cylindrical metal object in the other. Trooper Lima recognized this as a grinder — a device for shredding marijuana — and observed what he believed to be particles of marijuana in the grinder. For his safety, and because it was cold, Trooper Lima placed the defendant in the back seat of the cruiser, telling him he was not under arrest.

Trooper Guerriero then carried out a detailed search of the interior of the car. He found a plastic bag of what he thought was marijuana and a number of empty plastic bags inside the boot covering the gear shift lever. Trooper Guerriero found a loaded revolver under the rear seat when, intending to look under the seat, he lifted it slightly and it "spr[a]ng forward and went upright." The defendant then was handcuffed and arrested.

1. *Possession of the firearm.* The defendant argues that the evidence was insufficient to prove knowledge, dominion, or control over the revolver and ammunition. We examine whether the evidence, viewed according to the familiar standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), was sufficient for the jury to find beyond a reasonable doubt that he constructively possessed the revolver. Constructive possession requires proof that the defendant had "knowledge coupled with the ability and intention to exercise dominion

---

[3]The troopers learned that the car was registered to the defendant's mother and observed that it had a valid inspection sticker.

and control" (citations omitted). *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989). Knowledge may be proved by circumstantial evidence. *Commonwealth* v. *Sespedes,* 442 Mass. 95, 99 (2004), and cases cited.

The defendant was traveling alone in a car that he maintained and frequently operated, although it was registered to his mother.[4] The defendant repeatedly glanced at the location of the firearm during the traffic stop. The defendant's mother denied ownership of the firearm. It is a reasonable inference that the revolver was purposefully hidden in a well under the rear seat, but was accessible with minimal difficulty because of the unusual folding action of the seat.[5] Also, there were items in the car and in the trunk that appeared to be linked to the defendant: a number of compact discs (CDs) scattered in the car, male clothing and footwear, and a quantity of "homemade" CDs in the trunk. The jury reasonably could infer that the defendant knowingly had the revolver under his control. The motion for a required finding of not guilty properly was denied.

2. *Drug analysis and ballistics certificates.* The defendant argues that the holding of *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009), that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits," requires the reversal of his convictions. *Id.* at 2542. Although the defendant did not object to the introduction of the certificates on confrontation grounds, we review the constitutional issue as if it had been preserved by proper objection and determine whether the admission of the certificates was harmless beyond a reasonable doubt. *Commonwealth* v. *Vasquez,* 456 Mass. 350, 352 (2010).

a. *The marijuana.* "[T]he Commonwealth must prove beyond a reasonable doubt 'that a substance is a particular drug' because such proof is an element of the crime charged." *Commonwealth* v. *Vasquez, supra* at 361, quoting from *Commonwealth* v. *Mc-Gilvery,* 74 Mass. App. Ct. 508, 511 (2009). Where, as here,

---

[4]The defendant's mother testified for the Commonwealth, principally stating that the defendant took care of the car and drove for her because she had surgery before his arrest, but that she had loaned the car to many others.

[5]Trooper Guerriero described this seat as unlike any other he had encountered in previously searching cars.

drug analysis certificates were erroneously admitted, "the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" ' that the improperly admitted evidence 'might have had' on the fact finder or the findings. *Commonwealth* v. *Tyree*, [455 Mass. 676,] 704 n.44 [(2010)], quoting *Commonwealth* v. *Dagraca*, [447 Mass. 546,] 555 [(2006)]." *Commonwealth* v. *Vasquez, supra* at 362.

There was no evidence other than the certificate that the substance in the plastic bag seized from under the boot over the gearshift was marijuana.[6] Trooper Lima read the portion of the certificate which stated that the "vegetable matter was found to contain [m]ari[j]uana." In the Commonwealth's opening statement, the prosecutor stated that the "evidence will show that the substance was tested at the state lab, and the substance was, in fact marijuana." There were numerous, matter-of-fact references to the substances as marijuana. The troopers did not open the plastic bag seized to conduct any field tests, such as burning or smelling the raw substances. Although Trooper Lima testified that he smelled marijuana and observed what looked like marijuana when he approached the car, he did not at any time express an opinion based on any objective criteria, such as training or expertise. See *Commonwealth* v. *Vasquez, supra* at 365, quoting from *Commonwealth* v. *Melendez-Diaz*, 76 Mass. App. Ct. 229, 233 (2010) ("admission of drug certificates *not* harmless beyond reasonable doubt where 'word "cocaine" frequently was used by the police, but at no time did the officers cite any objective evidence, criteria, or field tests; they did not articulate how their expertise permitted them to identify the

---

[6]Two drug analysis certificates were admitted in evidence. Concerning the substances in the plastic bag, the State police crime laboratory certificate stated that "0.42 grams of vegetable matter" in a zip lock plastic bag was "found to contain [m]ari[j]uana," and stated that "[a]lso submitted was one zip lock plastic bag containing five zip lock plastic bags."

The certificate for the "silver metal grinder" stated that the grinder "was found to contain a residue of [m]ari[j]uana."

Both certificates contained the following provision: "Chapter 22C, Section 39. A certificate by a chemist of the department of the result of an analysis made by him of a drug furnished him by a police officer of the department, signed and sworn to by such chemist, shall be prima facie evidence of the composition, quality, and weight of such drug."

substances as cocaine' ''); *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 235, 244 (2009) (testifying officer not asked to identify substance based on his experience as narcotics officer). See also *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). Contrast *Commonwealth* v. *Madera*, 76 Mass. App. Ct. 154, 158 (2010) (detectives testified to their years of experience and training in narcotics). Accordingly, the admission of the drug certificates was not harmless beyond a reasonable doubt, and the defendant's conviction of possession of marijuana must be reversed.

b. *The revolver.* The holding in *Melendez-Diaz* applies to the ballistics certificate in this case. See *Commonwealth* v. *Depina*, 456 Mass. 238, 248 (2010). See also *Morales* v. *Massachusetts*, 129 S. Ct. 2858 (2009). "The Commonwealth's burden to prove that a weapon is a 'firearm' in the statutory sense is not a heavy one. See *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 2 (1997). 'It requires only that the Commonwealth present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire,' *id.*, and that it is under a certain length. See G. L. c. 140, § 121 (definition of '[f]irearm')." *Commonwealth* v. *Loadholt*, 456 Mass. 411, 430-431 (2010).

The evidence that the revolver would fire elicited at trial was as follows. Trooper Guerriero, who first saw the fully loaded gun, picked it up to determine if it was "authentic and not a replica."[7] Concluding it was authentic, he replaced it in the well under the rear seat where he found it. Trooper Lima took the revolver and began the process for preserving evidence. He made the revolver safe, removing six rounds of ammunition and placing the ammunition and the revolver in plastic bags, and identified them for processing to the State police laboratory. Trooper Guerriero delivered them for analysis.

Subsequently, the revolver and five rounds of ammunition were returned with one "spent" round (or casing with the slug

---

[7] The revolver was further identified by the manufacturer's designation and serial number, which were read into the record.

Also available to the jury was a photograph showing the revolver lying next to a ruler with inch divisions that are clearly readable. The jury readily would have been able to determine that the length of the barrel was less than sixteen inches.

missing). Trooper Lima testified that it appeared that the laboratory test firing had been made with the "spent" round, explaining why the casing returned differed from the five live rounds that had been returned intact. He was asked, without objection, whether the revolver had been test fired and if there were any malfunctions. He replied "yes" and "[t]here were none," respectively, to these questions. He did not read from the ballistics certificate.[8]

The ballistics certificate was not emphasized by the Commonwealth. In closing argument, defense counsel pointed out that the jury were not required to believe or accept the certificate. The Commonwealth did not refer to the certificate in its closing argument. The judge did instruct the jury that the certificate was prima facie evidence to be considered with all the evidence.

In determining whether, under these particular circumstances, the admission of the ballistics certificate was harmless beyond a reasonable doubt, we are guided by two cases, *Commonwealth v. Depina, supra,* and *Commonwealth v. Pittman,* 76 Mass. App. Ct. 905 (2010). In *Depina,* a gun found loaded with four live rounds and one "spent" casing was returned after examination by the State police firearms identification section with three spent casings and one live round. The police testified that the three spent rounds had been test fired. The "jury could reasonably infer that the State police had test fired the revolver using the live rounds." *Id.* at 250. The court concluded: "In view of this evidence, we are satisfied beyond a reasonable doubt that, even without the certificate, the evidence that the revolver was a working firearm . . . was overwhelming." *Ibid.*

In *Commonwealth v. Pittman, supra* at 905, 907, a gun found fully loaded was submitted with two live rounds to the State police laboratory for testing. Local police testified that one round was used in test firing, and explained the difference between the live round and the empty casing returned. "[T]here

---

[8] The State Police Firearms Identification Section certificate of examination and testing stated that a ".357 magnum caliber Sturm, Ruger revolver Speedy Six model," and "Six live cartridges" had been examined by a State trooper qualified as a ballistics expert. It was further stated that the revolver had been test fired and there were no malfunctions. The trooper opined that the items were a "FIREARM & AMMUNITION within the meaning of and as defined in [G. L. c. 140, § 121]."

was overwhelming evidence independent of the ballistics certificate that the gun in question was operable." *Ibid.*[9]

In the present case, where the revolver was found loaded, the revolver and six live rounds were submitted for testing, five rounds were returned intact with one "spent" round, there was testimony explaining that evidence and the test firing, and there was a lack of emphasis on the certificates, we are constrained to conclude that the Commonwealth has established that the other evidence of guilt is so " 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" ' that the improperly admitted evidence 'might have had' on the fact finder." *Commonwealth* v. *Vasquez, supra* at 362, quoting from *Commonwealth* v. *Tyree, supra* at 704 n.44.

c. *The ammunition.* "With respect to 'ammunition,' there is no requirement of current functionality. The Commonwealth need not prove that 'particular ammunition is capable of being fired'; it only must show that 'the putative ammunition is designed for that purpose.' " *Commonwealth* v. *Loadholt,* 456 Mass. at 431, quoting from *Commonwealth* v. *Mendes,* 44 Mass. App. Ct. 903, 904 (1997). The evidence that the revolver was found loaded with bullets and that one round was used in test firing the revolver overwhelmingly proved that the ammunition was designed for use in a firearm. See *Commonwealth* v. *Muniz,* 456 Mass. 166, 173 (2010). The admission of the ballistics certificate was harmless beyond a reasonable doubt.

*Conclusion.* On the indictment charging possession of marijuana, the judgment is reversed, and the verdict and subsequent offense finding are set aside. The remaining judgments are affirmed.

*So ordered.*

---

[9]The cases in which the court has found that the admission of the ballistics certificate was not harmless beyond a reasonable doubt are distinguishable. See *Commonwealth* v. *Pittman,* 76 Mass. App. Ct. 905, 907 (2010).