COMMONWEALTH vs. JASON BARBOSA.

Norfolk. November 8, 2011. - January 31, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Firearms. Motor Vehicle,* Firearms. *Practice, Criminal,* Confrontation of witnesses, Harmless error. *Evidence,* Ballistician's certificate.

At the trial of indictments charging the defendant with, inter alia, unlawfully having a firearm under his control in a motor vehicle, the erroneous admission in evidence of a certificate of ballistics examination, without accompanying testimony by the analyst who created it, in violation of the defendant's constitutional right to confrontation, could not be said to be harmless beyond a reasonable doubt, where the evidence that the weapon was operable (an essential element of the Commonwealth's case) was not overwhelming without the certificate. [434-437]

INDICTMENT found and returned in the Superior Court Department on February 16, 2007.

The case was tried before *Janet L. Sanders,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Alison R. Bancroft* for the defendant.

*Alexei Tymoczko,* Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. In 2008, a jury convicted the defendant of having a firearm without a license in his control in a motor vehicle, G. L. c. 269, § 10 (*a*)[1]; possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (*h*) (1); and possession of marijuana, G. L. c. 94C, § 34. In a following jury-waived trial, the defendant was found guilty on subsequent offender charges related to the firearm and marijuana

[1]This offense incorporates the definition of "[f]irearm" under G. L. c. 140, § 121 (defining "[f]irearm" as "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than [sixteen] inches").

convictions.[2] The defendant appealed, arguing, among other contentions not relevant here, that the admission in evidence of drug certificates of analysis and a ballistics certificate of examination violated his right to confrontation as set forth in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009) (*Melendez-Diaz*). *Commonwealth* v. *Barbosa*, 77 Mass. App. Ct. 340, 343 (2010). The Appeals Court concluded that the admission of drug certificates of analysis without a testifying witness was not harmless beyond a reasonable doubt, but that the admission of a ballistics certificate of examination was harmless beyond a reasonable doubt. *Id.* at 345, 347. The court reversed the indictment charging possession of marijuana (and set aside the verdict and subsequent offense finding on that charge), and affirmed the remaining judgments. *Id.* at 347. We granted the defendant's application for further appellate review limited to the question concerning the effect of the admission of the ballistics certificate of examination. Because the defendant does not argue that the erroneous admission of the ballistics certificate of examination had any impact as to the unlawful possession of ammunition conviction, we confine our review to the effect of its admission solely as to the unlawful possession of a firearm conviction. Because the evidence that the weapon was operable was not overwhelming without the ballistics certificate of examination, we conclude that the admission of the certificate was not harmless beyond a reasonable doubt, and that the judgment of conviction on the indictment charging the defendant with having a firearm without a license in his control in a motor vehicle must be reversed.

1. *Background.* The background of the case appears in *Commonwealth* v. *Barbosa, supra* at 341-342. We repeat, however, the facts relevant to the issue before us.

The weapon in question and ammunition were recovered by State troopers during a justifiable motor vehicle stop in Randolph of an automobile driven by the defendant and registered to his mother. At trial, Trooper Michael Guerriero, who found the weapon, a .357 revolver, testified that he touched the weapon to confirm that it was "authentic," then placed it back where he had found it, and later photographed it before moving it again

---

[2]The defendant was found responsible on a charge of registration plate violations, G. L. c. 90, §§ 6 and 6C. This finding was filed and is not before us.

(into an evidence bag). At the State police barracks in Milton, Trooper Guerriero's partner, Trooper Robert Lima, made the weapon "safe" by removing its six rounds of ammunition. The ballistics evidence was bagged and boxed, and identifying numbers were assigned. Trooper Guerriero transported the evidence for analysis.

Subsequently, the revolver and five rounds of the ammunition were returned. Concerning the discrepancy in the amount of ammunition returned, the judge sustained the defendant's objection to Trooper Lima's testimony concerning one round of ammunition being used for a test-fire on the ground that it had not been demonstrated that Trooper Lima had personal knowledge of what tests, if any, had been done. Trooper Lima did testify, however, that one spent projectile returned from analysis was a "test one," and that it appeared that a ballistician had "fired a test round." Although Trooper Lima also testified that the revolver had been test-fired and that there were no malfunctions regarding its operation, that testimony was based on his reading of the ballistics certificate of examination and test-fire from the "Firearms Identification Section" of the State police.[3] The ballistics

---

[3]Our characterization is contrary to what is stated in *Commonwealth* v. *Barbosa*, 77 Mass. App. Ct. 340, 346 (2010). We rely on the italicized words in the colloquy that occurred as follows between the prosecutor and Trooper Robert Lima during his direct examination:

THE PROSECUTOR: "What is that *document that you're looking at*?"

THE WITNESS:      "I am looking at the certificate of examination and test firing from the firearms identification section of the Massachusetts State police, located in Sudbury, Massachusetts."

"  . . .

THE PROSECUTOR: "And was this gun test fired?"

THE JUDGE:         "*According to that document*?"

THE PROSECUTOR: "If you can *refer your attention to the three words* —"

THE WITNESS:       "Yes, it was."

THE PROSECUTOR: "The gun was test fired?"

THE WITNESS:       "Yes."

THE PROSECUTOR: "So this is — *according to this document*, this is, in fact, the firearm?"

certificate of examination was admitted in evidence, as were photographs of the weapon and the weapon itself.[4]

The Appeals Court correctly noted the following:

> "The ballistics certificate was not emphasized by the Commonwealth. In closing argument, defense counsel pointed out that the jury were not required to believe or accept the certificate. The Commonwealth did not refer to the certificate in its closing argument. The judge did instruct the jury that the certificate was prima facie evidence to be considered with all the evidence."

*Commonwealth* v. *Barbosa, supra* at 346.

2. *Discussion.* Following the defendant's conviction, the United States Supreme Court in *Melendez-Diaz, supra,* held that, in the absence of stipulation, the confrontation clause of the Sixth Amendment to the United States Constitution prohibits the admission of a State laboratory certificate of analysis as evidence against an accused unless the accused has the opportunity to cross-examine the analyst who attested to the laboratory results. *Melendez-Diaz, supra* at 2532. We have applied this holding not only to certificates of drug analysis, but also to ballistics certificates of examination. See *Commonwealth* v. *Depina,* 456 Mass. 238, 248 (2010). In this case, the Commonwealth concedes, as it must, that it was error to admit the ballistics certificate of examination. The Commonwealth argues, however, that the error is of no consequence because the certificate was incidental to the case and cumulative of independent overwhelming evidence.

THE WITNESS:      "That is correct."

THE PROSECUTOR: "And were there any malfunctions?"

THE WITNESS:      "There were none."

[4]The ballistics certificate of examination stated that a ".357 magnum caliber Sturm, Ruger revolver Speedy Six model," and "[s]ix live cartridges" had been examined by a State trooper (not Trooper Lima) qualified as a ballistics expert. It was further stated that the revolver had been test-fired and there were no malfunctions. The trooper opined that the items were "FIREARM & AMMUNITION within the meaning of and as defined in [G. L. c. 140, § 121]."

Because the trial was conducted before the United States Supreme Court's decision in *Melendez-Diaz, supra,* we review to determine whether the admission of the certificate of examination was harmless beyond a reasonable doubt despite the absence of an objection to its admission on constitutional grounds. *Commonwealth* v. *Vasquez,* 456 Mass. 350, 352 (2010). "[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" ' that the improperly admitted evidence 'might have had' on the fact finder or the findings." *Id.* at 362, quoting *Commonwealth* v. *Tyree,* 455 Mass. 676, 704 n.44 (2010).

The Commonwealth was required to prove as an essential element of its case that the weapon recovered was a working or operable firearm; that is, that the gun was capable of discharging a shot or bullet. See *Commonwealth* v. *Depina, supra* at 249; *Commonwealth* v. *Muniz,* 456 Mass. 166, 170 (2010). "The Commonwealth's burden to prove that a weapon is a 'firearm' in the statutory sense is not a heavy one." *Commonwealth* v. *Loadholt,* 456 Mass. 411, 430-431 (2010), *S.C.,* 460 Mass. 723 (2011), citing *Commonwealth* v. *Nieves,* 43 Mass. App. Ct. 1, 2 (1997). "It requires only that the Commonwealth present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire . . . ." *Commonwealth* v. *Loadholt, supra* at 431, quoting *Commonwealth* v. *Nieves, supra.*

The Commonwealth contends that there was ample evidence that the revolver was a working firearm apart from the ballistics certificate of examination, thereby rendering its improper admission inconsequential. Specifically, the Commonwealth points to (1) Trooper Guerriero's testimony that the firearm was "authentic"; (2) Trooper Lima's treatment of the firearm as operable as demonstrated by his making the weapon safe by clearing it of ammunition; (3) the fact that the jury were able to inspect the physical evidence, namely, the firearm, ammunition, and spent shell, as well as photographs of the firearm, during their deliberations; (4) the fact that the firearm was loaded when seized; (5) the fact that the ballistics testing process was described; (6) the fact that a spent casing was returned after bal-

listics testing; (7) Trooper Lima's opinion testimony that it appeared that ballistics had fired a "test round"; and (8) Trooper Lima's testimony that the firearm had been test-fired and did not malfunction. The Commonwealth asserts that pursuant to *Commonwealth* v. *Depina, supra,* any error was harmless.

Trooper Guerriero's testimony that the firearm was "authentic," while evidence that the firearm was indeed a firearm, did not bear on the question whether the weapon was operable. Trooper Lima's actions of making the revolver safe also do not speak to whether the weapon could actually fire. Inspection by the jury of the physical evidence pertained to the sufficiency of the evidence, not to whether admission of the ballistics certificate of examination was harmless beyond a reasonable doubt. *Commonwealth* v. *Muniz, supra* at 171-172, and cases cited. Nor has the fact that the weapon was loaded when discovered been found to establish harmlessness beyond a reasonable doubt, absent the presence of a *spent* casing in the weapon's chamber. *Id.* at 172, citing *Commonwealth* v. *Ware,* 76 Mass. App. Ct. 53, 57 (2009) (gun with round in chamber and loaded magazine admitted in evidence not sufficient for court to conclude that ballistics certificate did not contribute to jury's verdicts). See *Commonwealth* v. *Depina, supra* at 250 ("While it is conceivable that a revolver may contain a spent casing and still not be capable of discharging a bullet, the compelling inference from such testimony is that the spent casing found by [the officer] in the revolver remained after the discharge of a bullet from that revolver").[5]

Trooper Lima's testimony as to his general understanding of the process followed by the ballistics department did not speak to whether the revolver recovered in this case was capable of discharging a shot or bullet. In fact, it was made quite clear in the record that Trooper Lima had no personal knowledge of the process that occurred in this case, and during his cross-

---

[5]Even in *Commonwealth* v. *Depina,* 456 Mass. 238, 250 (2010), where a spent casing was found in a chamber of the revolver, additional corroborative evidence existed on the issue whether the revolver was operable, namely, evidence that three of the live rounds sent to the State police for testing were returned as spent projectiles. Only with this additional evidence did we conclude that the erroneous admission of the ballistics certificate of examination "did not in any way affect the jury's verdict." *Id.* at 250-251.

examination he specifically stated, "I'm not a firearms expert . . . ." Although Trooper Lima testified that out of the six live rounds sent for analysis, five were returned as well as a spent casing marked "test," and that from that evidence it "appear[ed]" that a ballistician had fired a test round, this testimony was speculation, as not based on personal knowledge. Cf. *Commonwealth* v. *Pittman,* 76 Mass. App. Ct. 905, 907 (2010) (testifying expert identified spent casing introduced in evidence "as the one returned to the local police after ballistics testing was performed on the gun"). Moreover, we have required additional evidence about whether a weapon is operable apart from the fact that live rounds sent for examination were returned as spent projectiles in the absence of the testimony of the person who performed the examination and test firing. See *Commonwealth* v. *Depina, supra* at 250-251 (evidence that spent casing was found in weapon *together with* fact that live rounds sent for ballistics testing were returned as spent projectiles made erroneous admission of certificate of examination harmless beyond reasonable doubt). Finally, Trooper Lima's testimony that the firearm had been test-fired and did not malfunction was derived from the certificate of examination. Any representation to the contrary is belied by the record. See note 3, *supra.*

After carefully examining the record, we conclude that the evidence presented by the Commonwealth that the weapon in this case was operable did not nullify the effect of Trooper Lima's testimony expressly based on the content of the certificate of examination and the certificate of examination itself, both of which were admitted in violation of the defendant's constitutional rights. The erroneously admitted evidence cannot be said to be have been harmless beyond a reasonable doubt.

3. *Conclusion.* The judgment of conviction on the indictment charging the defendant with having a firearm without a license in his control in a motor vehicle, G. L. c. 269, § 10 (*a*), is reversed, and the verdict and subsequent offense finding are set aside. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*