NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-754                                        Appeals Court

COMMONWEALTH  vs.  ALEXANDRIA DRAPANIOTIS.

No. 14-P-754.

Middlesex.     December 30, 2015. - April 1, 2016.

Present:  Kafker, C.J., Cypher, Berry, Green, & Blake, JJ.[1]

Firearms.  Evidence, Firearm, Hearsay.


Indictments found and returned in the Superior Court
Department on September 28, 2010.

The cases were tried before Thomas A. Billings, J., and
following a mistrial, the remaining cases were tried before
Bruce R. Henry, J.


David J. Rotondo for the defendant.
Emily Kathleen Walsh, Assistant District Attorney, for the
Commonwealth.


BERRY, J.  Presented in this appeal are the defendant's

three convictions arising out of her stealing firearms owned by

---

[1] This case was initially heard by a panel comprised of
Justices Berry, Green, and Blake. After circulation of a
majority and dissenting opinion to the other justices of the
Appeals Court, the panel was expanded to include Chief Justice
Kafker and Justice Cypher. Following the expansion of the
panel, the court ordered a rehearing of the case before the
expanded panel. See Sciaba Constr. Corp. v. Boston, 35 Mass.
App. Ct. 181, 181 n.2 (1993).

her father,[2] and then selling or trading the firearms for drugs.

There were five indictments, involving three different firearms.

There were two trials. The first trial resulted in one

conviction, one verdict of not guilty, and a mistrial by jury

deadlock on the three other indictments. In the second trial,

convictions entered on those three remaining indictments, and

those convictions are pending in this appeal.[3]

The three convictions on appeal and the two particular

firearms at issue are as follows: (a) on one indictment (count

3), the defendant was convicted under G. L. c. 266, § 30(1), of

larceny of a Smith and Wesson .45 caliber pistol (hereinafter

the .45); (b) on another indictment (count 1), the defendant was

convicted under G. L. c. 266, § 30(1), of larceny of a .38

caliber handgun (hereinafter the .38); and (c) on yet another

---

[2] Because the defendant and her father share a surname, we will refer hereafter to Alexandria Drapaniotis as the defendant, and to her father, John Drapaniotis, as Drapaniotis.

[3] Even though the conviction from the first trial is not before us, given the lack of specification concerning the particular firearm in most of the five indictments, it is helpful to align each firearm with the respective indictment count and its disposition first or second trial. In the first trial, the defendant was convicted of larceny of a .40 caliber firearm under G. L. c. 266, § 30(1). That conviction was not appealed, and the .40 caliber firearm is not one of the two guns that underlie the convictions in this appeal.

Further, in the first trial, the defendant was found not guilty of possession of a loaded firearm, a Smith and Wesson .45 caliber firearm, under G. L. c. 269, § 10(n). That .45 caliber firearm is at issue in two of the convictions in this appeal -- all as further described in this opinion.

indictment (count 4), the defendant was convicted under G. L. c. 269, § 10(a), of unlawful possession of the .45 without a license, whether said firearm was loaded or unloaded.

Each applicable firearm statute -- G. L. c. 266, § 30(1), and G. L. c. 269, § 10(a) -- requires proof that the subject firearm was operable, i.e., that it was a firearm "from which a shot or bullet can be discharged."[4]

---

[4] The larceny statute, G. L. c. 266, § 30(1), inserted by St. 1968, c. 737, § 10, requires, in pertinent part, the Commonwealth to prove the firearm is as defined in G. L. c. 140, § 121:

"Whoever steals . . . the property of another as defined by this section . . . shall be guilty of larceny, and shall, if the property stolen is a firearm, as defined in section one hundred and twenty-one of chapter one hundred and forty, . . . be punished . . ."

(emphasis added). In turn, G. L. c. 140, § 121, as amended by St. 1998, c. 180, § 8, incorporated in the larceny statute, defines an operable firearm as

"a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured . . ."

(emphasis added). Under G. L. c. 269, § 10(a), as amended by St. 1990, c. 511, § 2, it is a criminal offense to possess a firearm without a license. The statute provides that

"[w]hoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty"

In this case, the sole issue on appeal is directed to whether the Commonwealth met its burden of proof on operability of the .45 and the .38 by sufficient and competent evidence. Because the two firearms were never recovered following the defendant's selling or trading of them, there was no ballistics analysis. Nor, of course, was either the .38 or the .45 introduced in evidence as an exhibit. Thus, proof of operability rested on Drapaniotis's trial testimony.[5] Having reviewed that trial testimony, we conclude that the defendant's convictions of larceny of the .45 and unlawful possession of the .45 without a license were supported by sufficient competent evidence, including as to operability. This follows in particular because Drapaniotis testified that he fired the .45.

There is no such evidence concerning the .38. Indeed, reduced to the evidentiary core, only two words in Drapaniotis's testimony are directed to the precise issue of proof of this element of operability, that is, whether the .38 was capable of discharging a bullet. The prosecutor questioned: "Who said it worked?" Drapaniotis answered: "The dealer." (The short context in which this question and answer fell in a five

---

shall be guilty of this offense unless one of several exemptions apply, including an exemption for having obtained a license to possess said firearm.

[5] See Commonwealth v. Tuitt, 393 Mass. 801, 810 (1985); Commonwealth v. Muniz, 456 Mass. 166, 171 (2010).

question/five answer sequence is quoted in full, infra).  This testimony, including even the five-question, five-answer context, does not constitute either competent evidence or sufficient evidence of proof of an essential element of the firearm criminal statutes.  Further, as discussed herein, the salesman statement came into evidence only because defense counsel failed to object to what was clearly objectionable:  its double hearsay nature and lack of foundation.  Therefore, no one knows (and there is no proof of) how or whether the salesman had any basis in personal knowledge or any other basis in fact to serve as a separate foundation (such as a manufacturer's test report or certification) to support that of which he randomly spoke.

Discussion.  Although the prosecutorial burden to prove that a firearm is operable and capable of discharging a bullet and thus is a "firearm" as defined in the criminal statutes may not be a heavy one, significantly, it is a burden that rests on "competent evidence."  Commonwealth v. Loadholt, 456 Mass. 411, 430-431 (2010), S.C., 460 Mass. 723 (2011).  The case law is clear:  to meet the burden of proof of operability, "the Commonwealth [must] present some competent evidence from which the jury reasonably can draw inferences that the weapon will fire."  Ibid., quoting from Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 2 (1997).  See Commonwealth v. Barbosa, 461 Mass.

431, 435 (2012) ("The Commonwealth was required to prove as an essential element of its case that the weapon recovered was a working or operable firearm; that is, that the gun was capable of discharging a shot or bullet"); Nieves, supra (Commonwealth's burden of proof is to "present some competent evidence from which the jury reasonably can draw inferences that the weapon will fire").  See also Commonwealth v. Housewright, 470 Mass. 665, 680 (2015) (despite fact that gun was not recovered, there was sufficient and competent evidence to establish operability based on witnesses' testimony that witnesses saw "the defendant loaded and then fired a weapon that looked like a gun, sounded like a gun, and flashed like a gun").

Competent evidence is a sine qua non of proof of the operability element of the firearm offense and is also intertwined with the sufficiency of the evidence standard set forth in Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). Embedded in Latimore is the axiomatic standard of review in determining sufficiency that is continually, indeed is relentlessly, relied upon, and quoted from, in our criminal cases.  We repeat here, on the one side of the balance, that Latimore holds that evidence is to be viewed in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Ibid., quoting from Jackson

v. <u>Virginia</u>, 443 U.S. 307, 318-319 (1979).  However, also embedded in <u>Latimore</u> is the counterbalancing standard of review, equally axiomatic, that "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt."  <u>Id</u>. at 677-678.

The intertwining between competent evidence on the operability element of proof set forth in <u>Loadholt</u>, <u>supra</u>, <u>Barbosa</u>, <u>supra</u>, and <u>Nieves</u>, <u>supra</u> (and cases that follow in their wake), and the <u>Latimore</u> evidence sufficiency standard is quite well illustrated in the <u>Nieves</u> case:[6]

> "[I]n the absence of some evidence of capacity to discharge
> a bullet, such as that the gun was fired, the manner it was
> used, the ammunition inside, the testimony of persons who
> handled the gun, testimony of persons familiar with guns,
> or a ballistics certificate, the evidence is insufficient
> to put to the jury the question of fact, on proper
> instruction, whether the gun in question is capable of
> discharging a bullet.  To require less would strip of
> meaning the Legislature's careful definition of a firearm

---

[6] Indeed, it was in <u>Nieves</u> that this court (Kass, J.) first stated the principle that, although the prosecutorial burden of proof that the weapon is a firearm in the statutory sense is not a heavy one, that burden clearly requires that there be "<u>competent</u> evidence from which the jury reasonably can draw inferences that the weapon will fire" (emphasis added).  <u>Nieves</u>, 43 Mass. App. Ct. at 2.  This principle of competent evidence articulated in <u>Nieves</u> was adopted by the Supreme Judicial Court in <u>Loadholt</u>, <u>supra</u>, and <u>Barbosa</u>, <u>supra</u>, and both cases cite and quote from <u>Nieves</u> regarding competent evidence.

as a weapon which, whether loaded or unloaded, is one from which a shot or bullet can be discharged."

43 Mass. App. Ct. at 3-4.

In cases such as this one -- no firearm available as a trial exhibit, no ballistics evidence -- the necessary element of operability may be proved by witness testimony and related circumstantial and corroborative evidence.  See Commonwealth v. Tuitt, 393 Mass. 801, 810 (1985); Commonwealth v. Muniz, 456 Mass. 166, 171 (2010).  However, where proof of operability rests on such witness testimony and other related circumstantial evidence, the testimony and other evidence itself must be competent and sufficient.  We turn then to the testimony relating to operability underlying the subject convictions.

Drapaniotis testified that he worked for a security company and was licensed to carry a firearm.  In 1999, Drapaniotis bought the .45 (which was a used firearm).  In 2000 or 2001 Drapaniotis bought the .38 (which was a new firearm).

On or about May 17, 2006, Drapaniotis discovered that the .38 was missing.  Then, on or about December 19, 2008, Drapaniotis discovered that the .45 was missing.  At both times, he reported the theft of the respective guns to the Medford police department.  Drapaniotis testified that the defendant had been present in the family home around the dates that each gun

went missing.  He further testified in detail about the defendant's struggle with heroin addiction.

After reporting the .45 missing to the police in December, 2008, Drapaniotis told the defendant that she needed to speak with the police or she would not be allowed to return to the home.  On December 22, 2008, the defendant then spoke with Officer David Rooney at the Medford police station, where she admitted to stealing each of Drapaniotis's guns.  The defendant further stated that she had sold two of the guns to her drug dealer, and she traded the third gun for heroin.

a.  The .45.  We begin with the Drapaniotis's testimony relating to the .45 because for this particular firearm, the issue of operability is more quickly and definitely resolved under established case law, since Drapaniotis testified that he test fired the .45:

Prosecutor:    "Okay. And that 45 caliber gun, when you purchased that in 1999, how long did you have that gun for?"

Drapaniotis:   "Right until I think 2008."

Prosecutor:    "And between 1999 and 2008, did you ever fire that gun?"

Drapaniotis:   "I believe I did."

Prosecutor:    "Do you remember when you did?"

Drapaniotis:   "I think right after we bought it."

Prosecutor:    "And when you fired it, where was it?"

<u>D</u>rapaniotis:     "At a range."

<u>P</u>rosecutor:      "Do you remember where that range was?"

<u>D</u>rapaniotis:     "Tewksbury."

<u>P</u>rosecutor:      "And when you fired it, did it fire correctly?"

<u>D</u>rapaniotis:     "Yes."

That Drapaniotis fired the .45 meets the standard of proof of operability under the controlling case law.  See <u>Commonwealth</u> v. <u>Sylvester</u>, 35 Mass. App. Ct. 906, 907 (1993) (testimony that defendant used handgun to fire four or five shots was sufficient to show that weapon was operable).  Cf. <u>Commonwealth</u> v. <u>Mendes</u>, 75 Mass. App. Ct. 390, 397 (2009) ("independent evidence [that] included testimony of three audible shots, the three empty casings, and the smell of gunpowder" was sufficient to render harmless admission of ballistics certificate).  Contrast <u>Commonwealth</u> v. <u>Brown</u>, 75 Mass. App. Ct. 361, 363 (2009) (conviction of unlawful possession of firearm without license not sustainable where there was not "any evidence that the gun had been fired at any time, much less at the time of the offense").

b.  <u>The .38</u>.  The .38 presents a far more sketchy picture. All that the prosecution offered to meet the essential element of operability was the following snippet in Drapaniotis's testimony.

Prosecutor:    "And did you have an understanding as to whether [the .38] worked?"

Drapaniotis:    "Yes."

Prosecutor:    "And what was your understanding?"

Drapaniotis:    "That they sold [sic] it when I bought it they said it worked."

Prosecutor:    "Who said it worked?"

Drapaniotis:    "The dealer."

Prosecutor:    "And did you take their word for it?"

Drapaniotis:    "Yes."

Prosecutor:    "Okay. And you never had to fire -- you never fired that weapon at a range?"

Drapaniotis:    "No, no."

As the foregoing testimony demonstrates, Drapaniotis himself never test fired or discharged a bullet from the .38, which he purchased in 2000 or 2001. Moreover, there was nothing in Drapaniotis's testimony that he ever even inspected the firing mechanism to confirm whether the .38 actually "worked," that is, could actually fire a shot or bullet. Drapaniotis even expressed uncertainty about his having even loaded ammunition into the gun: "That I can't remember. Sometimes yes, sometimes no, so I . . . ."[7]

---

[7] Even had Drapaniotis been clear about whether he put ammunition in the .38 at times, that does not, standing alone, prove operability. "The presence of ammunition, without direct evidence that a weapon's firing mechanism is functioning, is insufficient [to prove operability]." Commonwealth v. McCollum,

In sum, Drapaniotis's testimony acknowledging that he did not fire, did not test, and did not check the firing mechanism, and that he had absolutely no personal knowledge of whether the .38 could discharge a bullet, and the salesman's comment, which also was not predicated on any personal knowledge or testing reflected in the trial record, and so too lacked any foundation whatsoever, leaves an evidentiary void on operability as to the .38.[8]  "[I]n the absence of some evidence of capacity to discharge a bullet, such as that the gun was fired, the manner it was used, the ammunition inside, the testimony of persons who handled the gun, [or] testimony of persons familiar with guns, . . . the evidence is insufficient to put to the jury . . . whether the gun in question is capable of discharging a bullet." Nieves, 43 Mass. App. Ct. at 3-4.

There being no personal knowledge or foundation to meet the operability element of proof, what the dissent relies on most tellingly is Drapaniotis's ten year old recollection (in the unobjected-to hearsay) that the salesmen said the .38 "worked."

---

79 Mass. App. Ct. 239, 249 (2011).  See Commonwealth v. Hollister, 75 Mass. App. Ct. 729, 733 (2009) (gun may be loaded and at same time inoperable due to malfunction in firing mechanism).

[8] The fact that Drapaniotis testified he bought the .38 for his job and carried it with him during his security work does not prove the gun was operable.  Drapaniotis could have been carrying a broken, nonrepairable firearm that never could have been fired or discharge a bullet.

The dissent invokes the oft-stated colloquialism that a statement once admitted, without objection, is admitted for all purposes.  On that point, the dissent is premised on the theme that "[h]earsay, once admitted, may be weighed with the other evidence, and given any evidentiary value which it may possess" (emphasis added).  Commonwealth v. Carmona, 428 Mass. 268, 271 (1998), quoting from Commonwealth v. Keevan, 400 Mass. 557, 562 (1987).

Yet, therein lie the evidentiary rub and limitation, because any unobjected-to statement admitted at trial is only worth what it is worth.  In this case, the random recollection of puffing by the salesman was not competent evidence, lacked any foundation to establish on what basis the salesman made this comment, and thus had very little evidentiary worth.  Put another way, just because he said it does not make it so.  Indeed, the salesman might have added that the .38 not only worked, that it fired, but also that when it was working, it lit up with a fluorescent plume like a weapon from one of the "Star Wars" movies.

This double hearsay recollection from one witness (Drapaniotis) of a gun salesman -- "It works," spoken over a decade ago -- does not meet the standard for competent evidence under Loadholt, supra, Barbosa, supra, and Nieves, supra, or for sufficient evidence under Latimore, supra.  Drapaniotis's double

hearsay recitation of the salesman's comment is not, by alchemy, transformed into a competent and sufficient gem of evidence of operability. There is "concern about affirming a conviction . . . if the Commonwealth's evidence of the essential elements of the offense consisted entirely of inadmissible hearsay." Commonwealth v. Stovall, 22 Mass. App. Ct. 737, 740 (1986). See, e.g., Commonwealth v. Paniaqua, 413 Mass. 796, 806 (1992) (O'Connor, J., dissenting) ("The testimony concerning the police officers' beliefs, uninformed by training or experience, was without probative effect when it was offered, and it did not acquire probative effect by having been admitted without objection"). Particularly where hearsay is admitted in evidence for its "full value" because trial counsel failed to object, that "value" may be nonexistent. Cf. Agricultural Natl. Bank v. Schwartz, 325 Mass. 443, 448 (1950) ("Even if some . . . evidence may have been admitted without objection, it does not thereby become entitled to any probative effect").

One of the leading cases on operability, Commonwealth v. Barbosa, 461 Mass. at 435-437, is illustrative of the inherent lack of evidentiary "worth" in the salesman's remark pulled forward in time from some ten years ago. The court in Barbosa analyzed what is, and what is not, competent evidence of operability -- even if a particular statement or statements are admitted in evidence concerning whether a firearm is operable.

Ibid.  In Barbosa, the Supreme Judicial Court dismissed as "speculative," and neither sufficient nor competent evidence to prove operability, a State trooper's hearsay statements about operability which (as here) lacked foundation and personal knowledge.

> "Trooper Lima's testimony as to his general understanding of the process followed by the ballistics department did not speak to whether the revolver recovered in this case was capable of discharging a shot or bullet.  In fact, it was made quite clear in the record that Trooper Lima had no personal knowledge of the process that occurred in this case [to test operability], and during his cross-examination he specifically stated, 'I'm not a firearms expert . . . .'  Although Trooper Lima testified that out of the six live rounds sent for analysis, five were returned as well as a spent casing marked 'test,' and that from that evidence it 'appear[ed]' that a ballistician had fired a test round, this testimony was speculation, as not based on personal knowledge."

(Emphases added.)  Id. at 436-437.  There was no way to know why, how, or whether the salesman had test fired the .38, whether the salesman had some manufacturer's report of test firing, or whether the salesman was just assuming that a new gun like the .38 "worked."  Just as the trooper's testimony in Barbosa of that of which he knew not on personal knowledge was "speculation" and did not constitute "competent" or "sufficient" evidence of operability (as opposed to "speculation"), so too Drapaniotis's testimony that a salesman commented that the .38 "worked" had no basis in personal knowledge and was speculation without evidentiary foundation.

Conclusion.  On counts 3 and 4, charging the defendant with larceny of the .45 and unlawful possession of the .45 without a license, the judgments are affirmed.  On count 1, charging the defendant with larceny of the .38, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

So ordered.

GREEN, J. (dissenting, with whom Blake, J., joins).  In her statement to police, the defendant admitted that she stole the guns at issue from the victim (her father).  I agree with the majority that the evidence of operability of the .45 caliber weapon, while not overwhelming, when viewed in a light most favorable to the Commonwealth was sufficient to establish the element of operability.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1978).  I dissent, however, from the majority's conclusion that the evidence was insufficient to allow a rational jury to conclude that the .38 caliber weapon was also a firearm.

The victim testified at trial that he purchased the .38 caliber weapon new from a gun dealer, who told him that it worked.  Though the dealer's statement that the gun worked at the time of sale was hearsay, it was admitted without objection. In the absence of an objection, hearsay testimony is properly admitted, and the jury is "entitled to give [the statement] such probative effect as they deem[] appropriate."  Commonwealth v. Julien, 59 Mass. App. Ct. 679, 687 (2003), quoting from Commonwealth v. Paniaqua, 413 Mass. 796, 803 (1992).[1]  Put

_____

[1] The defendant has raised no claim of ineffective assistance of counsel by reason of trial counsel's failure to object to the hearsay.  At oral argument on rehearing, the defendant's appellate counsel expressly eschewed reliance on any claim that the hearsay evidence might be reviewed "to ascertain whether the jury's consideration of it may have created a

another way, "our consideration [of the sufficiency of the evidence] 'is to be measured upon that which was admitted in evidence without regard to the propriety of the admission.'" Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014), quoting from Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010). The victim testified that he loaded the weapon with ammunition on occasion. Though as the majority observes evidence that the gun was loaded with ammunition is inadequate standing alone to establish that the gun was operable, it constitutes some evidence in support of that proposition. See Commonwealth v. Hollister, 75 Mass. App. Ct. 729, 732 (2009).[2] To prove operability, the Commonwealth may rely on reasonable inferences drawn from circumstantial evidence including, as in the present case, an inference that a handgun purchased new, working at the time of purchase, loaded with ammunition from time to time by its owner (a security professional), and carried by him in the regular course of his duties remained in operating condition at

---

substantial risk of a miscarriage of justice." Commonwealth v. Silva, 431 Mass. 401, 405 (2000), quoting from Commonwealth v. Collier, 427 Mass. 385, 390 n.5 (1998).

[2] We note that in Commonwealth v. Hollister, 75 Mass. App. Ct. at 731, the court examined the evidence of operability for the purpose of assessing whether the evidence, stripped of a ballistics certificate improperly admitted, was so strong as to render the admission of the certificate harmless beyond a reasonable doubt. For the same reason, the majority's reliance on Commonwealth v. Barbosa, 461 Mass. 431, 435 (2012), is also misplaced.

the time of its theft, particularly in the absence of any evidence that its condition had deteriorated or otherwise changed during the intervening period.

The majority opinion discounts the value of the dealer's statement to the victim by challenging its foundation.  However, in the absence of an objection, any deficiency in the foundation for the dealer's statement, or any challenge to its veracity, goes solely to the weight to be accorded that evidence, and accordingly is within the province of the jury.  See Commonwealth v. Zitano, 23 Mass. App. Ct. 403, 407 (1987).  In assessing the sufficiency of the evidence of the defendant's guilt, "[i]t makes no difference whether we . . . would as jurors have voted to acquit [the defendant] or whether we ourselves think that there is some reasonable doubt.  The question posed by  Jackson [v. Virginia, 443 U.S. 307, 324 (1979),] is whether 'any' rational jury could on the evidence presented think [the .38 caliber weapon was operable] so likely as to exclude all reasonable doubts. . . .  A rational jury might well have acquitted without violating its oath; but, drawing all reasonable inferences in favor of the prosecution, a rational jury could also convict."  Stewart v. Coalter, 48 F.3d 610, 616 (1st Cir.), cert. denied, 516 U.S. 853 (1995).  In my view, the fact that the dealer's representation was hearsay, offered without explanation of the basis of his knowledge, and

even self-serving, does not render irrational a jury's conclusion adopting the unremarkable suggestion that a .38 caliber handgun, purchased as new and represented by the dealer as being in working condition, was capable of firing a bullet.